SMITH *v.* AMERICAN INSURANCE CO.

INSURANCE—CONCURRENT INSURANCE—VENDOR AND PURCHASER.

Where the plaintiff, with the consent of defendant insurance company, sold the property insured under a land contract which provided that the purchaser should keep the premises insured for the benefit of the seller, and in case of loss the insurance should apply on the unpaid balance due, and where the vendee obtained further insurance of another corporation on the equity in the property, an action lay in favor of the vendor against the first insurer for the full amount of the policy which was less than the balance due under the land contract. Since the vendee obtained the second policy without the vendor's consent, the rights of the latter were not affected, and he was not entitled to any benefit under that policy of insurance.

Error to Ingham; Collingwood, J. Submitted June 16, 1913. (Docket No. 130.) Decided September 30, 1913.

Assumpsit by Edward P. Smith and Carrie Smith

against the American Insurance Company on a policy of fire insurance. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Cummins & Nichols,* for appellant.

*Harry E. Hooker,* for appellees.

MOORE, J. This is an action on a policy of fire insurance issued by the defendant covering a dwelling house, then owned by plaintiffs, and situate in the city of Lansing. At the close of the proofs defendant moved the court to direct a verdict, which motion was overruled. Defendant thereupon submitted certain requests to charge, which were refused by the court. Verdict and judgment were in favor of plaintiffs for $717.50, which was the full amount of the policy and interest. The case is here by writ of error.

The facts are as follows: At the time of the issuance of the policy plaintiffs were the owners in fee of the property. Later they sold the property on land contract to one Amelia Ossanetzki, who agreed to keep the property insured for the benefit of the plaintiffs. To accomplish that result, she paid them the premium for the unexpired portion of the insurance, and the parties went to the agent of defendant and stated to him the situation, when the following indorsement was made on the policy:

"Permission is hereby granted to sell the property covered by this policy, on contract to Amelia Ossanetzki attached to, and forming a part of policy of No. 9099 of the American Insurance Company of New Jersey.

"Dated at Lansing, Mich., December 20, 1910.
"LANSING INSURANCE AGENCY, Agent.
"Per CHAS. S. EMERY, Secy."

The policy so indorsed was left with the plaintiffs. On the execution of the contract, Mrs. Ossanetzki

went into possession, and continued in possession until the property was destroyed by fire, and at the time of the trial the land contract was still in force. At the time of the fire there was due on the contract $700 and interest. About six months after the land contract was made, Mrs. Ossanetzki procured insurance in her own name on her interest in the house and on her household goods. The plaintiffs had no knowledge of this insurance until after the fire, and their names are not mentioned in the second policy. On December 17, 1911, the dwelling house was completely destroyed by fire. There was no claim the building did not exceed $700 in value, nor was there any dispute but that the value of the lot, without the dwelling, was about $400.

The policy issued by the defendant company was the usual form of Michigan standard policy, and contained this clause:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. Liability for re-insurance shall be as specifically agreed hereon."

There was attached to and made a part of the policy this clause:

"Other concurrent insurance permitted; but it is especially agreed that if there shall be other insurance on said property, this company shall be liable only *pro rata*, with such other insurance, whether same covers concurrent with this policy or not."

In the land contract between the plaintiffs and Mrs. Ossanetzki there appeared this clause:

"(3) Said second party shall keep the buildings now on, or that may hereafter be placed on, said premises insured in the name and in manner and amount and by insurers approved by said first party and leave the policy with first party, and in case of loss the insurance, unless by mutual agreement used to repair or rebuild, shall be paid to first party and be indorsed on this contract to the extent of the amount unpaid thereon, and the balance if any shall belong and be paid to second party."

The second insurance company claimed to Mrs. Ossanetzki that their policy on the house was void because of the previous policy, and returned that part of the premium applying to the insurance on the house, and paid her her loss on the household goods, and canceled the policy.

We cannot state the claim of defendant better than to quote from the brief:

"At the time of the issuance of the policy, plaintiffs were owners in fee of the property insured. And had the loss occurred while they remained the sole and unconditional owners of the property, no question would have arisen as to the liability of defendant for the full amount of the policy sued on in this case. But at the time of the fire, plaintiffs' interests had changed (with consent of defendant) to that of vendors. They were not at the time of the loss the sole and unconditional owners of the property. On the contrary, their vendee, Mrs. Ossanetzki, was the sole and unconditional owner of the property."

" 'The proposition that the vendee under a contract for the purchase of land, or under a bond for conveyance of title, is a sole and unconditional owner, within the meaning of a policy of insurance, is supported by well-nigh all the authorities; only a few cases being found to dispute it,' citing cases. [20 L. R. A. (N. S.) 775, case note.]

"Undoubtedly the vendee, Mrs. Ossanetzki, had an insurable interest to the full value of the property. * * * But in the case of a vendor, the rule is different. The only loss or damage which the plain-

tiffs could by any possibility suffer was the loss or damage to their interest in the property insured. * * * We submit, therefore, that plaintiffs were not entitled to recover, in any event, more than the 'loss or damage' to their interest in the property insured."

"Now, what was the 'loss or damage' to plaintiffs' interest? It is undisputed that at the time of the loss there was $700 balance due on plaintiffs' contract with their vendee. It is also undisputed that at the time of the loss a policy of insurance on this same property had been taken out by plaintiffs' vendee in her own name in the Commonwealth Insurance Company for $700. By the terms of the land contract between plaintiffs and their vendee, it was made the duty of the vendee to keep the premises insured in the name of the vendors, 'and in case of loss the insurance, unless by mutual agreement used to repair or rebuild, shall be paid to first party and be indorsed on this contract to the extent of the amount unpaid thereon.' While it is true that the policy in the Commonwealth Company was surrendered by the vendee and not recovered on by either the vendee or the plaintiffs, it is likewise true that the policy in that company was valid and enforceable, and the proceeds in equity belonged to the plaintiffs. * * *

"But the result of such a doctrine leads to the absurdity and injustice of permitting the plaintiffs to recover the amount of the balance due on their contract from the defendant, and at the same time collect the same amount from the Commonwealth Company under their contract with their vendee, (unless it should be held that the policies in these two companies must prorate the loss, a proposition we will take up later). * * *

"If the court should not accede to these views, then we contend that defendant company under its contract with plaintiffs was entitled to prorate the loss with the Commonwealth Insurance Company, and was only liable for one-half of the loss, or $350."

This proposition is argued at length. Finally counsel say:

"If it be held that the policy in the Commonwealth

Company is not other insurance within the meaning of the defendant's policy, and that defendant is not entitled under its contract with plaintiffs to prorate this loss with the Commonwealth Company, the result will be to establish a rule of law in this State that will permit a vendor to recover from two or more companies the full amount of any and all policies that may exist on the same property in his own name or for his benefit, thereby recovering, as in this case might have and still may be done, twice the amount of the loss or damage to his interests, and several hundred dollars more than the admitted value of the specific property destroyed. No such construction, in the interests of honesty and fair dealing, is called for. And the plain language of the contract does not permit of it."

We do not agree with the views expressed by counsel which we have quoted. When the policy was obtained from defendant by plaintiffs, they were the owners in fee of the property. Later they made a sale of the property upon land contract, with the consent of defendant, and, everybody who was interested recognizing that they retained an insurable interest in the property, the permit to sell was granted, and they retained the policy; the agreement being between the vendor and the vendee that, if loss occurred, the plaintiffs might receive as their portion of the loss the amount unpaid on the contract, and the balance be paid to the vendee. Neither the plaintiffs nor the defendant were ever parties to any other or different contract. The vendee, without consulting either the plaintiffs or defendant, insured her interest in the property in another company. Whether the second policy was good or bad as to the vendee of the plaintiffs is not a question necessary to decide. Plaintiffs had no interest in the second policy because their vendee had already carried out her agreement to keep the property insured for their benefit.

We think it equally clear that the policy which had been retained by the plaintiffs, under the agreement

between the plaintiffs and their vendee, could not be changed to the harm of the plaintiffs without consulting them, by their vendee attempting to get insurance upon her interest in the property. See *Miller* v. *Aldrich*, 31 Mich. 408; *Hall* v. *Insurance Co.*, 90 Mich. 403 (51 N. W. 524); *Hogadone* v. *Insurance Co.*, 133 Mich. 339 (94 N. W. 1045); *Brunswick-Balke-Collender Co.* v. *Assurance Co.*, 142 Mich. 29 (105 N. W. 76); *Id.*, 150 Mich. 311 (113 N. W. 1113); *Craig* v. *Insurance Co.*, 162 Mich. 657 (127 N. W. 757); *Goodwin* v. *Insurance Co.*, 163 Mich. 41 (127 N. W. 790).

Judgment is affirmed.

STEERE, C. J., and McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.